IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHEN LYNN HUGUELEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-02885 |
| ) | Judge Crenshaw |
| BILL HASLAM et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Stephen Lynn Hugueley is a state prisoner incarcerated on the death row unit at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. Before the court is Plaintiff's application to proceed *in forma pauperis*. (Doc. No. 10.) In addition, Plaintiff has filed a complaint for civil rights violations under 42 U.S.C. § 1983 against defendants Bill Haslam, Tony Parker and Bruce Westbrooks,[1] which is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e. (Doc. 9.) Plaintiff's motion to appoint counsel is also before the Court. (Doc. No. 13).

**I.    Application to Proceed *In Forma Pauperis***

Under 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because Plaintiff properly submitted an *in forma pauperis* affidavit, and because it appears from his submissions

---

[1] For purposes of this order only and because it is not necessary for the Court to do otherwise under the circumstances present here, the Court will assume, without deciding, that Haslam, Parker and Westbrooks are properly named as defendants.

that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance, the application (Doc. No. 10) will be granted.

Nevertheless, under § 1915(b), Plaintiff remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs' the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff will be assessed the full $350 filing fee, to be paid as directed in the order accompanying this memorandum opinion.

## II. Initial Review under the PLRA

### A. Standard of Review

Under the PLRA, the court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief may be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. (citing Twombly, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    **Factual Allegations**

Plaintiff's allegations concern the operation of the death row unit at RMSI. Plaintiff alleges that RMSI's death row has experienced a resurgence of gang activity, coercion, extortion and dealing of contraband, such as cell phones and marijuana. Plaintiff alleges that of the approximately 65 inmates housed on death row, 50 are allowed out of their cells without restraints for 8 to 14 hours each day and that many of these inmates have jobs at the facility that allow them access to most of the death row unit and other locations within the facility. Plaintiff alleges that the way the death row unit is currently being operated exposes every inmate, correctional employee and the public to "possible physical danger" on a daily basis. (Doc. 1 at Page ID# 76.) Additionally, Plaintiff alleges that the public is exposed to an "electronic threat" from death row inmates who possess cell phones. (Id.)

Plaintiff's allegations go into detail about past, in some instances many years past, incidents of violence, which he alleges resulted from the failure of Tennessee Department of Corrections ("TDOC") officials to "lock-down" death row inmates. As pertinent here, Plaintiff alleges that A-Level death row inmates are frequently found possessing cell phones. Indeed, Plaintiff alleges that he has possessed and used cell phones during the time he has been on the

3

death row unit to contact the media, to set up webpages on publically available group websites and dating websites, and to communicate and "do business" with prisoners in other facilities. (Doc. 9 at Page ID# 81.) Plaintiff identifies many other death row inmates who have been caught possessing cell phones, and he alleges that for every inmate caught with a cell phone, there are many more who, though possessing cell phones, have yet to be caught. Plaintiff alleges that the TDOC knows that death row inmates are obtaining cell phones, but refuses to acknowledge the potential danger that death row inmates with cell phone access pose to the public, institutional staff and prisoners. That said, Plaintiff describes multiple searches conducted by RMSI officers to locate and remove contraband, including cell phones. See e.g., Doc. No. 1 at Page ID# 77-78 regarding searches conducted on November 21, 2016, July 29, 2016 and July 25, 2016.

Plaintiff sets forth details regarding several fights that he has observed since he arrived on the death row unit in 2002. Plaintiff alleges that he has seen fights between death row inmates and between death row inmates and staff. Plaintiff attributes these fights to the fact that unrestrained death row inmates are allowed out of their cells.

Plaintiff notes that he has "spotted at least three weaknesses in death row security that if exploited could lead to serious harm or death," and he asserts that the Defendants are not taking preventative action. (Id. at Page ID# 82.)

Plaintiff alleges that a gang of A-level death row inmates has taken over the death row unit and that the gang controls the sale and movement of contraband, and to the extent members of this gang work in the kitchen, they control the amount of food served to inmates. Plaintiff alleges that this gang has begun using intimidation and coercion to try to prevent other prisoners from associating with or talking to him. He also alleges that A-level death row inmates who are kitchen workers have told other inmates that if they talk to Plaintiff they will not get any extra

food or help getting their commissary food items heated or cooked. Plaintiff alleges that on or about November 1, 2016, death row inmate Marlon Kiser, apparently a member of the gang, threatened to kill death row inmate Richard Odom if Odom continued to talk to or associate with Plaintiff. Plaintiff alleges that Kiser told inmates in the pod not to talk to, or do anything for, Plaintiff or Odom. Odom reported Kiser's conduct to prison officials who moved Odom to a different pod. Plaintiff alleges that Odom is at risk if he ever returns to the death row unit.

Plaintiff alleges that incompatible inmates have access to each other despite having been identified and documented as incompatible.[2] Plaintiff alleges that this creates a dangerous condition on death row that could result in an inmate being killed. Plaintiff alleges that Donnie Johnson, an inmate with whom Odom is incompatible, works as an inmate advisor and was given access to Odom's pod and represented Odom, against his wishes, in connection with a disciplinary report. Plaintiff alleges that on December 2, 2016, after Johnson was allowed to come into Odom's pod, Odom spoke with Corporal Mosley and asked why incompatibles were being allowed into his pod. (Doc. No. 1 at Page ID# 85.) Plaintiff alleges that Mosley told Odom that it did not matter because Johnson was working. (Id.)

Plaintiff alleges that death row inmates are allowed weekly contact visits with family and friends. Plaintiff alleges that inmates are supposed to be strip-searched in connection with these visits, but that this does not happen. Plaintiff alleges that a small amount of contraband, such as marijuana and an occasional SIM card, are brought in during these visits.

Plaintiff alleges that there are too many volunteers entering the death row unit and teaching classes there. Plaintiff alleges that contraband is brought in by volunteers who occasionally give inmates cigarettes or marijuana. Additionally, Plaintiff alleges that volunteers

---

[2] TDOC Policy Index # 404.09(IV)(B) explains that incompatible inmates are "inmates who pose a significant and substantiated potential for physical harm to one another."

who bring in arts and crafts supplies often allow inmates to keep these supplies and bring them to their cells in a violation of TDOC policy.

Plaintiff states that he believes that Tennessee is the only state that allows death row inmates to be out of their cells without restraints, allows death row inmates to have jobs, and allows death row inmates to have contact visits. Plaintiff alleges that because of this, Tennessee is the only state in which cell phones are found on the death row unit, fights break out between death row inmates and death row inmates are able to assault guards. Plaintiff alleges that the only way to stop this dangerous behavior is to lock down all death row inmates.

As relief, Plaintiff sets out eight remedial measures that he requests that the Court order Defendants to initiate.

**C.    Discussion**

The first issue the Court must consider is whether Plaintiff has standing to bring this action. Plaintiff bears the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" required to establish standing. Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S. Ct. 1540 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975). As the Sixth Circuit recently explained:

> "Article III limits the judicial power of the United States . . . and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597–98, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)). Consequently, it must be determined whether Plaintiffs have "'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." Warth v. Seldin, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). . . . To satisfy Article III's standing requirements, a plaintiff must show: "(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or

6

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Loren, 505 F.3d at 606–07 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

* * *

As the Supreme Court recently affirmed in Spokeo, Inc. v. Robins, an injury-in-fact contains the two distinct elements of particularization and concreteness. ––– U.S. ––––, 136 S.Ct. 1540, 1548–50, 194 L.Ed.2d 635 (2016). For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." Id. at 1548 (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130); see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). While "particularization is necessary to establish injury in fact[,] . . . it is not sufficient." Spokeo, 136 S.Ct. at 1548. A plaintiff must also show that he suffered a concrete injury, defined as a "de facto" injury, meaning that the injury "must actually exist." Id.

Soehnlen v. Fleet Owners Ins. Fund, -- F.3d --, 2016 WL 7383993, at * 3 (6th Cir. Dec. 21, 2016).

Plaintiff does not satisfy Article III's standing requirement because his allegations fail to establish that he has suffered an "injury-in-fact." Loren, 505 F.3d at 606–07. Indeed, Plaintiff has not set forth any facts to suggest that he has or will suffer any injury at all, let alone an injury that is "concrete and particularized, . . . actual or imminent." Loren, 505 F.3d at 606–07. At best, Plaintiff's allegations suggest that death row inmates, death row unit staff and the public <u>could</u> possibly or potentially[3] be threatened or harmed by death row inmates as a result of the security issues that Plaintiff has identified; <u>to</u> <u>wit</u>; death row inmates' access to cell phones, interactions between unrestrained death row inmates, staff and volunteers, and interactions between

---

[3] See e.g., Doc. No. 9 at Page ID# 76 (noting the "potential for physical violence" against every inmate and correctional officer, the "potential for being assaulted," the public exposure to "possible physical danger"); Id. at Page ID# 80 (noting that "just because [an escape planned via cell phone] has never happened with a death row prisoner doesn't mean that it will not happen.")

incompatible inmates. These allegations are inadequate to establish that Plaintiff has a "'personal stake in the outcome'" necessary to establish standing. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

Moreover, the fact that an event occurred in the past is insufficient to establish that it is "actual or imminent" for purposes of demonstrating standing. Loren, 505 F.3d at 606-07.

> Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.

Lyons, 461 U.S. at 101–02. Plaintiff alleges only the possibility of some future harm befalling a large number of people; death row inmates, death row unit staff and the public. Nowhere does he set forth facts to suggest that he has been harmed or is immediately at risk of being harmed as a result of the alleged security issues he has identified.

Based on the foregoing, Plaintiff's action must be dismissed for lack of subject matter jurisdiction.[4]

Moreover, even if the Court had subject matter jurisdiction over this action, it would still be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff fails to state an Eighth Amendment claim against Defendants for failing to properly protect him because he has not alleged facts suggesting that Defendants have been deliberately indifferent to the dangers he faces living on death row.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth

---

[4] Even assuming that Plaintiff could establish standing, however, his allegations belie any claim that he brings this action for himself alone. Plaintiff's complaint is replete with warnings about the possible risk of harm faced by all other death row inmates, death row unit staff and the public. However, Plaintiff lacks standing to asset the rights of others. See Newsom v. Norris, 888 F.2d 371, 381 (6th Cir. 1989). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners, death row unit staff or the public. 28 U.S.C. § 1654; see Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist., 409 F.3d 753, 755 (6th Cir. 2005).

8

Amendment. Farmer v. Brennan, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that: (1) the failure to protect him from risk of harm is objectively "sufficiently serious;" and (2) that prison officials acted with "deliberate indifference" to his safety. Farmer, 511 U.S. at 833-34. While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. Thompson v. County of Medina, Ohio, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Plaintiff fails to set forth any facts to suggest that the Defendants have been deliberately indifferent to his safety in any way. Plaintiff does not allege that the failure of Defendants to keep death row inmates restrained, to keep cell phones away from death row inmates or to keep incompatible prisoners separate from one another poses any risk to his safety, let alone a "substantial risk" to his safety.[5] Moreover, in his complaint, Plaintiff acknowledges that RMSI staff conducted searches on at least three occasions over a four month period, July 25 and 29, 2016 and again on November 21, 2016, looking for cell phones and other contraband. Thus, by his own words, Plaintiff makes clear that Defendants are attempting to abate threats to the safety of all death row inmates. While Plaintiff may believe the number of searches is insufficient or the strategy employed is deficient, his allegations suggest at the very least that the Defendants

---

[5] Indeed, to the extent that Plaintiff's allegations even come close to suggesting that Defendants have been deliberately indifferent to inmate safety, the inmate whose safety was allegedly as risk was not Plaintiff but Odom. (See Doc. 9 at Page ID# 85.)

are not deliberately indifferent to the safety of death row inmates.[6]

Finally, as continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. See Washington v. Harper, 494 U.S. 210, 224 (1990); Turner v. Safley, 482 U.S. 78, 84-96 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Bell v. Wolfish, 441 U.S. 520, 547 (1979); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 125-126 (1977). These concerns are even stronger when a state penal institution is involved. Glover v. Johnson, 138 F.3d 229, 241 (6th Cir. 1998). Moreover, where, as here, Plaintiff's allegations suggest that the Defendants are attempting to handle the problem of cell phones and contraband on death row, whether they wish to admit that safety on death row is a problem or not, the Court's obligation to accord the prison administration deference is manifest.

## III. MOTION TO APPOINT COUNSEL

Plaintiff seeks the appointment of counsel to assist him in the prosecution of this case.

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. Abdur-Rahman v. Mich. Dep't of Corr., 65 F.3d 489, 492 (6th Cir. 1995); Lavado v. Keohane, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. Abdur- Rahman, 65 F.3d at 492; Lavado, 992 F.2d at 604-05; see Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

---

[6] Likewise, that Defendants have ignored Plaintiff's recommended preventative measures does not suggest deliberate indifference because: (1) Plaintiff has not alleged any facts to suggest that there exists a substantial risk to his safety, and (2) merely because Defendants are not following Plaintiff's recommendations does not mean that they are deliberately ignoring risks to inmate safety.

without the help of counsel. *See* Lavado, 992 F.2d at 606.

Because this action will be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, Plaintiff's motion to appoint counsel will be denied as moot.

## IV. CONCLUSION

For the reasons set forth herein, the complaint must be dismissed because the Court lacks subject matter to consider it. Additionally, even if the Court had subject matter jurisdiction, the complaint fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). For the same reasons that the court dismisses this action, the court finds that an appeal of this action would not be taken in good faith. The court therefore certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by the petitioner would not be taken in good faith, and the petitioner will not be granted leave by this court to proceed on appeal *in forma pauperis*.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE